STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. HARDEN BROOKS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 11, 1985—Decided April 25, 1985.

Before Judges McELROY, DREIER and SHEBELL.

*Joseph A. Falcone,* Passaic County Prosecutor, for appellant (*Gary H. Schlyen,* Senior Assistant Prosecutor, of counsel and on the brief).

*Mitchell, Taylor & Young,* for respondent (*James E. Young, Jr.* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

The State has appealed, on leave granted by us, from an interlocutory decision by the Law Division suppressing the results of a search pursuant to a search warrant for the reason that the materials obtained by the police did not fall within the description of the property to be seized set forth in the warrant. The State contends that a reading of the affidavits presented in support of the warrant application amply supports the proposition that the description of the property to be seized in the warrant was mere harmless error, unfortunately overlooked by the issuing municipal court judge, and that the materials found at the described premises were seized in good faith reliance upon the warrant.

Defendant argues that, although the trial judge raised the issue of the applicability of *United States v. Leon*, 468 *U.S.* ——, 104 *S.Ct.* 3405, 82 *L.Ed.*2d 677 (1984), the State in violation of *R.* 3:5–7 failed to submit a brief in response to defendant's brief in support of the suppression motion and, therefore, should not be heard with respect to the *Leon* issue.

It is true that the State has the obligation on a suppression motion to file a brief in support of its position. *State v. Walker*, 117 *N.J.Super.* 397, 398 (App.Div.1971). In this case, however, the judge had before him defendant's motion and brief. Whatever sanction, if any, may be appropriate to enforce *R.* 3:5–7, the remedy for the State's failure to file a brief is certainly not that the evidence objected to by defendant automatically will be suppressed. *Evid.R.* 9(1) requires that a court take judicial notice "without request by a party, of the decisional, constitutional, and public statutory law and rules of court of this State and the decisional, constitutional, and public statutory law and rules of court of the United States...." The trial judge properly discharged his duty in considering and analyzing all relevant law. Irrespective of the Rules of Evidence, such a duty devolved on the trial judge. *Carlo v. Okonite-Callender Cable Co.,* 3 *N.J.* 253, 260 (1949). We at

the appellate level are under a similar duty. The presentations before us and our own research aid us in our consideration of each matter under the applicable law up to the date of our decision. Defense counsel's assertion that the State may not cite on appeal case law not presented in the trial court is, in a word, incorrect.

The facts before us are relatively simple. The investigating detectives presented to the municipal court judge ample grounds for reasonable cause to believe that a numbers operation was being conducted at defendant's barber shop. Attached to the affidavits was a printed form of search warrant requiring completion by the detectives by filling in the judge's name, a description of the defendant and the place to be searched, the statutes allegedly violated, the property to be seized and their own names. Unfortunately, although the balance of the search warrant form was correctly completed, the property to be seized was described as:

Certain paraphernalia used in the process of bookmaking on horses, geldings, mares, racing at various tracks and other sporting events. Plus all instruments used to prevent detection or aid in the escape from the offense.

The detective who completed this form noted that he had been assigned only recently to this duty and copied the language from an old warrant form, thinking that the wording was required in all gambling cases. The municipal court judge, after reviewing the detailed description of the investigation and noting that there was probable cause, obviously only scanned the warrant form briefly and then signed it.

These facts place before us the Supreme Court decisions in *United States v. Leon,* and its companion case *Massachusetts v. Sheppard,* 468 *U.S.* ——, 104 *S.Ct.* 3424, 82 *L.Ed.*2d 737 (1984). The trial judge found that these decisions were not to be applied retroactively to govern the search in the matter before him. After receipt of the notice of motion for leave to appeal, the trial judge issued a supplementary written opinion indicating two bases for his decison: the warrant (1) lacked the required specificity, and (2) could not have been signed under these circumstances by a detached magistrate.

The first point is supported by pre-*Leon* law; the second point according to the trial judge is factually supported by the issuing judge's signature on a warrant which, in the paragraph noted above, had nothing to do with the activities described in the supporting affidavits. The trial judge accordingly concluded that the warrant had not been read and "that the warrant was not signed by a detached magistrate as required under our law." As to retroactive application of *United States v. Leon,* the trial judge noted that defense counsel presented to him a quotation from the case that the Supreme Court had been "unwilling to conclude that new Fourth Amendment principles are always to have a prospective effect. No Fourth Amendment decision marking a clear break with the past has been applied retroactively." As will be discussed below, an analysis of the quoted material, including the footnote reference, yields the opposite conclusion.

The State contends that *Leon* and *Sheppard* should be applied retroactively to the case before us. We recognize that where the United States Supreme Court has restricted police activity under the Fourth Amendment, such cases are not generally retroactively applied. *See United States v. Johnson,* 457 *U.S.* 537, 549, 102 *S.Ct.* 2579, 2586, 73 *L.Ed.*2d 202, 214 (1982). Similar examples can be cited at least back to *Linkletter v. Walker,* 381 *U.S.* 618, 85 *S.Ct.* 1731, 14 *L.Ed.*2d 601 (1965), holding that *Mapp v. Ohio,* 367 *U.S.* 643, 81 *S.Ct.* 1684, 6 *L.Ed.*2d 1081 (1961), extending the exclusionary rule to State prosecutions, would not be applied retroactively. Therefore, a clear break with the past involving the broadening of defendants' rights and correspondingly restricting police action should be regarded as prospective in nature because of the justified reliance that law enforcement authorities place on preexisting law. *Solem v. Stumes,* 465 *U.S.* ——, ——, 104 *S.Ct.* 1338, 1341, 79 *L.Ed.*2d 579, 589 (1984). *Cf. State v. Adams,* 200 *N.J.Super.* 385, 389–390 (App.Div.1985).

In contrast to these cases expanding defendant's rights and limiting previously sanctioned police action, stand the cases that

broaden the scope of permissible police activity. *United States v. Ross,* 456 *U.S.* 798, 102 *S.Ct.* 2157, 72 *L.Ed.*2d 572 (1982), which broadened the scope of warrantless searches under the "automobile exception," has been retroactively applied in various circuit court opinions. One of these opinions, *United States v. Johns,* 707 *F.*2d 1093, 1097 (9th Cir.1983), *rev'd* on other grounds —— *U.S.* ——, 105 *S.Ct.* 881, 83 *L.Ed.*2d 890 (1985), was reversed and remanded because the Ninth Circuit applied too limited an interpretation of *Ross,* 456 *U.S.* at ——, 105 *S.Ct.* at 887. The Court's reversal on the basis of too limited an application of *Ross* obviously concurred with the Ninth Circuit's reasoning as to retroactivity:

> The purpose of refusing to apply retroactively a new decision enforcing the exclusionary rule is to avoid penalizing police conduct when the police reasonably relied on existing judicial precedent ... When a court determines that a particular police practice does *not* violate the Constitution there is no reason not to apply that decision retroactively. 707 *F.*2d at 1097.

Similarly, *Illinois v. Gates,* 462 *U.S.* 213, 103 *S.Ct.* 2317, 76 *L.Ed.*2d 527 (1983) has been applied retroactively. There the Supreme Court abandoned the earlier two-pronged "basis of knowledge" and "veracity or reliability" test for the use of an informant's information and embraced a "totality of the circumstances" approach, thus broadening the scope of permissible police action. In *Massachusetts v. Upton,* —— *U.S.* ——, 104 *S.Ct.* 2085, 80 *L.Ed.*2d 721 (1984), the Court retroactively applied *Gates.*

In addition to *Ross* and *Gates, Leon* has been found to apply retroactively in *United States v. Sager,* 743 *F.*2d 1261, 1264–1265 (8th Cir.1984).

Notwithstanding the fact that "as a rule, judicial decisions apply retroactively," *Solem v. Stumes,* 465 *U.S.* at ——, 104 *S.Ct.* at 1134, 79 *L.Ed.*2d at 586, and that particularly decisions limiting the exclusionary rule have been held retroactive, the trial court in the present case refused to apply *Leon* retroactively, focusing on the language in *Leon* quoted earlier as precluding anything but prospective application. That lan-

guage, however, was quoted out of context. It, and its append-
ed footnote (with the portion quoted by the trial judge empha-
sized), reads:

> The same attention to the purposes underlying the exclusionary rule also has
> characterized decisions not involving the scope of the rule itself. We have not
> required suppression of the fruits of a search incident to an arrest made in
> good-faith reliance on a substantive criminal statute that subsequently is
> declared unconstitutional. *Michigan v. DeFillippo,* 443 US 31, 61 L Ed 2d 343,
> 99 S Ct 2627 (1979).[8] *Similarly, although the Court has been unwilling to
> conclude that new Fourth Amendment principles are always to have only
> prospective effect, United States v. Johnson,* 457 US 537, 560, 73 L Ed 2d 202,
> 102 S Ct 2579 (1982),[9] *no Fourth Amendment decision marking a "clear
> break with the past" has been applied retroactively.* See *United States v.
> Peltier,* 422 US 531, 45 L Ed 2d 374, 95 S Ct 2313 (1975); *Desist v United
> States,* 394 US 244, 22 L Ed 2d 248, 89 S Ct 1030 (1969); *Linkletter v Walker,*
> 381 US 618, 14 L Ed 2d 601, 85 S Ct 1731, 5 Ohio Misc 49, 33 Ohio Ops 2d 118
> (1965).[10] The propriety of retroactive application of a newly announced Fourth
> Amendment principle, moreover, has been assessed largely in terms of the
> contribution retroactivity might make to the deterrence of police misconduct.
> *United States v. Johnson,* supra [457 *U.S.*], at 560–561, 73 L Ed 2d 202, 102 S
> Ct 2579 [at 2592–2593]; *United States v. Peltier,* supra [422 *U.S.*], at 536–539,
> 542, 45 L Ed 2d 374, 95 S Ct 2313 [at 2316–2318].
>
> ---
>
> [10] Our retroactivity decisions have, for the most part, turned on our
> assessments of "(a) the purpose to be served by the new standards, (b) the
> extent of the reliance by law enforcement authorities on the old standards,
> and (c) the effect on the administration of justice of a retroactive applica-
> tion of the new standards." *Stovall v. Denno,* 388 US 293, 297, 18 L Ed 2d
> 1199, 87 S Ct 1967 [1970] (1967). As we observed earlier this Term,
>
> "In considering the reliance factor, this Court's cases have looked primari-
> ly to whether law enforcement authorities and state courts have justifiably
> relied on a prior rule of law said to be different from that announced by the
> decision whose retroactivity is at issue. Unjustified 'reliance' is no bar to
> retroactivity. This inquiry is often phrased in terms of whether the new
> decision was foreshadowed by earlier cases or was a 'clear break with the
> past.'" *Solem v. Stumes,* 465 US [——, —— — ——], 79 L Ed 2d 579, 104 S Ct
> 1338 [1343] (1984).
>
> [*Leon,* 468 *U.S.* at —— — ——, 104 *S.Ct.* at 3415–16, 82 *L.Ed.*2d at 691–92].
> [Emphasis added].

The trial court focused upon the "clear break with the past"
statement, but ignored both the reason, here inapplicable, for
that rule and the footnote indicating that the Court's "unwill-
ingness" to apply decisions retroactively has centered upon the
disruption of past police actions which have relied upon the
settled state of the law. No such bar exists when the Court
determines that police action was constitutional; certainly no

citizen relies upon the good-faith issuance of a warrant being thwarted by an error in the material included.

We find, therefore, that both *Leon* and *Sheppard* should be applied retroactively. While *Leon* dealt with an absence of probable cause [1], *Sheppard* dealt with a factual situation similar to that before this court. There, as here, there was an erroneous designation of the items to be seized. Although the documents supporting the warrant indicated that the warrant was desired to search for the clothing and possessions of a homicide victim, the warrant form was one designed for a controlled substance investigation. There the error was recognized and the judge informed the investigator that he would make the necessary changes, but unfortunately did not. The Supreme Court applied *Leon* (decided that day) stating that "the sole issue before us ... is whether the officers reasonably believed the search they conducted was authorized by a valid warrant." Since that belief existed, "the only question is whether there was an objectively reasonable basis for the officers' mistaken belief." 468 *U.S.* at —— – ——, 104 *S.Ct.* at 3428–29, 82 *L.Ed.*2d at 743–744.

In *Sheppard* the judge when handing the warrant to the detective told him that it "was sufficient authority in form and content to carry out the search as requested." *Id.* at ——, 104 *S.Ct.* at 3427, 82 *L.Ed.*2d at 742. The Court asserted that it refused "to rule that an officer is required to disbelieve a judge who has just advised him, by word and action that the warrant he possesses authorizes him to conduct the search he has requested," and noted that the officer "knew what items were listed in the affidavit presented to the judge and he had good

---

[1]We note that the probable cause element has been treated by Judge Coleman in *State v. Novembrino*, 200 *N.J.Super.* 229 (App.Div.1985), holding that New Jersey tradition would not permit departure from prior decisional law strongly requiring the demonstration of probable cause, and generally agreeing with the retroactivity principle discussed herein. 200 *N.J.Super.* at 237. *But see*, comment of Judge Simpson, concurring, doubting the retroactive applicability of *Leon*, 200 *N.J.Super.* at 246.

reason to believe that the warrant authorized the seizure of those items." *Id.*, at ——, 104 *S.Ct.* at 3429, 82 *L.Ed.*2d at 744.

■ In the case before us, the officer's affidavit correctly set forth the items he desired to seize: lottery slips, related paraphernalia, and other items indicative of an illicit lottery operation. The municipal court judge was informed that the officer was "looking for an illegal lottery operation." Here as in *Sheppard* the officer was not required to disbelieve the judge whose actions in reviewing the affidavit and placing his signature on the warrant form indicated that the warrant authorized the requested search. Under the "good faith" exception set forth in *Leon* and applied in *Sheppard,* the officer's actions when seizing the property in this case were objectively reasonable; the evidence seized should not be suppressed because the warrant "lacked the requisite specificity." The supporting affidavit clearly designated the intended items; an obvious defect in form should not preclude admission at trial of the evidence seized. *Sheppard,* at ——, 104 *S.Ct.* at 3428–29, 82 *L.Ed.*2d at 743–744.

The Supreme Court in *Leon* set forth four exceptions to the application of the "good faith" rule: (1) if probable cause is lacking to the extent that no objectively reasonable officer would rely upon the warrant; (2) if the affidavit contains material misstatements of fact; (3) if the issuing magistrate is not neutral and detached, but acted as a mere "rubber stamp;" or (4) if the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 *U.S.* at ——, 104 *S.Ct.* at 3422, 82 *L.Ed.*2d at 699. This fourth requirement, of course, must be read in light of *Sheppard.* Here, the particularity of such designation can be shown by the totality of the application before the municipal court judge; the officer who executed the warrant at the barber shop, having also submitted the affidavit, "reasonably presumed" the warrant's validity. "Suppression of evidence ... should be ordered only on a case-by-case basis and

only in those unusual cases in which exclusion will further the exclusionary rule ..." *Leon,* 468 *U.S.* at —, 104 *S.Ct.* at 3419, 82 *L.Ed.*2d at 695; "the rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.,* 468 *U.S.* at —, 104 *S.Ct.* at 3418, 82 *L.Ed.* 2d at 694.

 The trial court's second basis for excluding the evidence was that the warrant was "not signed by a detached magistrate as is required under our law." This is not borne out by the facts before us. Neutrality and detachment are required to assure that "probable cause" supports the request. The inferences from the facts which lead to the issuance of the warrant "must be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Aguilar v. Texas,* 378 *U.S.* 108, 84 *S.Ct.* 1509, 12 *L.Ed.*2d 723 (1964). Here the municipal court judge did not act as a "rubber stamp" or as adjunct to the law enforcement officer. See example in *Leon ,* 468 *U.S.* at — – —, 104 *S.Ct.* at 3417, 3422, 82 *L.Ed.*2d at 693, 699. The issuing judge here was presented with an affidavit setting forth all the factual predicates necessary to search for evidence of an illegal lottery operation. He performed the factual scrutiny necessary and found that probable cause existed to support the issuance of the warrant. There was no evidence before the trial judge of a lack of probable cause or the municipal judge's abandonment of his "neutral and detached" position in favor of a partisan viewpoint. The fact that when he turned to the warrant form he overlooked the incorrectly typed language describing the property to be seized in no way altered his status.

The order of the Law Division granting defendant's motion to suppress the evidence is vacated and the matter is remanded for trial. We do not retain jurisdiction.