683 A.2d 866

STATE OF NEW JERSEY, PLAINTIFF, v. ALFONSE T. CATALDO, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Essex County

Decided July 12, 1996.

528

*Jeffrey R. Cartwright,* Assistant Essex County Prosecutor, for plaintiff (*Clifford J. Minor,* Essex County Prosecutor, attorney).

*Thomas A. Cataldo* for defendant (*Giordano & Cataldo,* attorneys).

VICHNESS, J.S.C.

Based upon stipulated facts, Lieutenant Michael Reheis of the Major Criminal Investigations Unit of the Essex County Prosecutor's Office appeared before a judge of the Superior Court on May 3, 1995. At that time, Lieutenant Reheis submitted an affidavit to the judge in support of his application for seven search warrants (the affidavit was marked J–1 at the motion to suppress hearing).

In his affidavit, Lieutenant Reheis stated that he had received information from one reliable informant on Friday, March 31, 1995, and from a second reliable informant on Tuesday, April 4, 1995. Both informants told Lieutenant Reheis that defendant, Alfonse "Tic" Cataldo, was operating a large-scale lottery operation throughout Essex County. The second informant also told Lieutenant Reheis that defendant drove a red Honda, registration number GK252A, from which he conducted his illegal lottery operation. According to the New Jersey Division of Motor Vehicles, the Honda was registered in the name of American Honda Finance Corporation.

Lieutenant Reheis used the information that he had obtained as the basis for establishing a surveillance of defendant. Based on what he observed, what the informants had told him, and on his own experience, Lieutenant Reheis concluded that defendant was involved in promoting an illegal gambling operation out of several establishments in Essex County and was using the red Honda to facilitate his activities.

At the conclusion of his affidavit, Lieutenant Reheis requested that the judge issue seven search warrants. At issue are the warrants for the following search locations:

Sonny's Cleaners, 46 Pacific Street, Newark, New Jersey

DESCRIPTION OF PREMISES: Two story brick and siding building located at the Northeast corner of the intersection of Pacific Street and Warwick Street. Yellow hanging lighted sign with words "SONNY'S CLEANERS" just above front door. Front door is glass and faces Pacific Street. Large picture windows facing Pacific Street.

and

1995 Honda—Red—4 Door
N.J. Registration GK 252 A
and any persons found therein

After considering Lieutenant Reheis' affidavit and testimony, the judge signed all of the warrants (the warrants were marked J–2(a) through J–2(g) at the motion to suppress hearing). Both sides stipulated that probable cause existed for the issuance of the seven search warrants.

Warrant Four, pertaining to a Red 1995 Honda—Registration Number GK252A, contained what appeared to be an error on its face. Below the description of the vehicle and any persons found therein, the following "Description of Premises" was printed:

Two story brick and siding building located at the Northeast corner of the intersection of Pacific Street and Warwick Street. Yellow handing lighted sign with words "SONNY'S CLEANERS" just above front door. Front door is glass and faces Pacific Street. Large picture windows facing Pacific Street.

This description was the same description as contained in Warrant Three, for Sonny's Cleaners.

The day after procuring the warrants, May 4, 1995, the described Red Honda, being driven by defendant was stopped, and Lieutenant Reheis, among others, executed the appropriate search warrants. At the stop, a black satchel containing records of a lottery operation; a brown paper bag containing $4,880.00 (from the automobile's center console); adding machine tape with figures and notations (in the possession of defendant); cash wrapped in rubber bands, one bundle of $300.00 and one of $160.00 (also in the possession of defendant); a Motorola cellular phone; miscellaneous papers; an additional $275.00; legal documents pertaining to an unrelated criminal matter; and a CVS bag containing $11.00 and more papers were seized.

Later that day, law enforcement officers executed Warrant One, conducting a search of the residence at 97 Edgewood Drive in Florham Park, New Jersey. This search yielded more papers, a Samsung facsimile machine, and a Visitor's Register book.

To date, the State has not instituted any civil forfeiture action for any of the seized items, as required by N.J.S.A. 2C:64–3a.

Defendant moves to suppress the items seized from the Honda pursuant to Warrant Four. This motion is based on two claims: first, that Warrant Four was defective on its face because it contains two different descriptions, thus violating the particularity requirement of the United States and New Jersey Constitutions; and second, that the judge did not act as a detached and neutral magistrate in signing the defective warrant. Defendant also moves for the return of certain items (the cellular phone, the facsimile machine, and the Visitor's Register book) seized pursuant to the search warrants because they are not prima facie contraband and the State has not connected them to any illegal activity.

The Fourth Amendment to the United States Constitution provides that:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*U.S. Const.*, amend. IV.

■ It was unregulated discretion in the hands of government officers that prompted the Founding Fathers to place the twin limitations in the Amendment of establishing probable cause and particularly describing what was to be searched or seized in warrants. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 *U.S.* 192, 196, 48 *S.Ct.* 74, 76, 72 *L.Ed.* 231, 237 (1927). Thus, the use of explicit warrants protects the public by preventing law enforcement officials from entering property which they have no authority to invade. *State v. Wright*, 61 *N.J.* 146, 149, 293 *A.*2d 380 (1972).

The United States Supreme Court has long held that the federal proscription of unreasonable searches and seizures also applies,

through the Fourteenth Amendment, to the actions of state officers. *Wolf v. Colorado*, 338 *U.S.* 25, 27–28, 69 *S.Ct.* 1359, 1361, 93 *L.Ed.* 1782, 1785 (1949). The Court further determined in *Mapp v. Ohio*, 367 *U.S.* 643, 655, 81 *S.Ct.* 1684, 1691, 6 *L.Ed.*2d 1081, 1090 (1961), that "[s]ince the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government."

 Defendant specifically alleges that the search warrant for the 1995 Red Honda (Exhibit J–2(d)), which also contains a reference to a building known as Sonny's Cleaners, is violative of the Fourth Amendment to the U.S. Constitution and Article One, Paragraph Seven of the New Jersey Constitution, because it fails to describe with particularity the place that the officers were entitled to search. The United States Supreme Court set the standard for the sufficiency of a description in a search warrant over seventy years ago. "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 *U.S.* 498, 503, 45 *S.Ct.* 414, 416, 69 *L.Ed.* 757, 760 (1925). This is still the law today.

Defendant alleges that, because the search warrant for the 1995 Red Honda also contained a reference to a building known as Sonny's Cleaners, no officer executing the warrant could reasonably determine whether the warrant authorized a search of the automobile or a search of the building. The State asserts that the warrant is clearly for the 1995 Red Honda, which was specifically identified by its registration number (GK252A), and that the reference to Sonny's Cleaners is merely the result of a typographical error which should be treated as surplusage.

While no case reviewing a warrant with two descriptions has been found, the New Jersey Supreme Court has previously considered the issue of whether a description in a warrant containing a typographical error satisfies the requisites of the Fourth Amend-

ment. In *State v. Daniels,* 46 *N.J.* 428, 430, 431–32, 217 *A.*2d 610 (1966), a state police officer submitted an affidavit before a judge requesting a search warrant for a confectionery store located at 31 Avon Place in Newark. Subsequent to the issuance and during the execution of the warrant, it was learned that the confectionery store was actually located at 35 Avon Place. *Id.* at 432, 217 *A.*2d 610. These premises were searched. The defendants argued that the incorrect building number on the warrant rendered the description defective and that the accompanying details in the supporting affidavit were insufficient to correct the warrant's description.

The Court disagreed, noting that the store at 35 Avon Place was the only establishment on the block with a sign proclaiming it to be a candy store. *Id.* at 434, 217 *A.*2d 610. Thus, the warrant's description of the premises as a candy store was sufficient to narrow the scope of the warrant to the building for which probable cause had been established. "An officer could not only have, with reasonable effort identified the premises commanded to be searched, but would not with this warrant have been justified in searching any other premises in the block." *Id.* at 438, 217 *A.*2d 610. Because an officer executing the warrant could only reasonably identify the candy store as the proper subject of the warrant, the Court held that the description in the warrant met the standard of particularity required by the Fourth Amendment.

A second case, *State v. Bisaccia,* 58 *N.J.* 586, 279 *A.*2d 675 (1972), also addressed the issue of a misidentified street number in a search warrant. Like the premises in *Daniels,* the building in *Bisaccia* did not have a number on it, and the affiant in the supporting affidavit mistakenly concluded that the structure's address was lower than its neighbor's when, in fact, it was higher. *Id.* at 588, 279 *A.*2d 675. Unlike *Daniels,* however, the warrant did not contain a more detailed description of the premises. *Id.*

The Court held, however, that the search was valid. "The place searched was undeniably the place as to which probable cause had been made out, and the place searched was in fact the place the

warrant was meant to describe. Nor did the error in the street number in the warrant taint the justice of the search." *Id.* at 592, 279 *A.2d* 675. The Court stressed that the United States Supreme Court did not intend in *Steele v. United States, supra,* that the "reasonable effort" needed to identify the place indicated in the search warrant should be limited to only the face of the warrant. *Id.* "It would make sense to permit the officer to look at the affidavit in the official court file to resolve an ambiguity which appears when the warrant is sought to be applied to the physical scene." *Id.* Given that the affidavit thoroughly described the premises intended to be searched, the Court held that it could be read with the warrant in order to cure the warrant's defective description without threatening the safeguards of the Fourth Amendment. A review of the supporting affidavit in this case makes it clear that the 1995 Red Honda was one of the locations authorized to be searched. Any ambiguity could easily have been resolved by a review of the affidavit and by the fact that a separate warrant was issued for Sonny's Cleaners.

Defendant claims that his case differs significantly from both *Daniels* and *Bisaccia* because, whereas the warrants in *Daniels* and *Bisaccia* each referred to only one building, albeit incorrectly, the warrant for the 1995 Red Honda also contained a reference to an entirely different and separate structure, *i.e.,* Sonny's Cleaners. An examination of the warrant for the 1995 Red Honda shows that it contained identification of not only the color and make of the automobile, but also its registration number. The subject of the warrant was set apart from the body of the warrant by centering it on the page. "[I]t is not required that the description in a warrant identify each nook and cranny so long as the description enables the officer executing the warrant to ascertain with reasonable effort the place to be searched." *State v. Sheppard,* 46 *N.J.* 526, 530, 218 *A.2d* 156 (1966). An officer executing the warrant could ascertain, with little effort, that the 1995 red Honda was the subject of the search warrant by consulting the supporting affidavit, which established probable cause for searching the automobile. *See Bisaccia, supra,* 58 *N.J.* at 592, 279 *A.2d* 675. This is

particularly true where, as here, the officer executing the search warrant is the same officer who executed the affidavit. *See Daniels, supra*, 46 *N.J.* at 438, 217 *A.*2d 610.

▉ When determining whether a warrant complies with the particularity requirement, "[t]he standard . . . is one of practical accuracy rather than technical nicety." *United States v. Gomez*, 42 *F.R.D.* 347, 347 (S.D.N.Y.1967). Evaluations of law enforcement conduct in issuing and executing search warrants should not be "strained and hypertechnical and indifferent to the common sense of the situation." *State v. De Simone*, 60 *N.J.* 319, 325, 288 *A.*2d 849 (1972). Rather, the interpretation of Fourth Amendment standards should be based upon reasonableness.

> The fundamental requirement of the Fourth Amendment is reasonableness. Granting requisite adherence to the basic essentials of that concept assuring proper recognition of the individual liberties sought to be safeguarded thereby, the validity of law enforcement conduct should not be judicially tested by *post facto* technicalities and formalisms of no vital importance.
>
> [*State v. Romeo*, 43 *N.J.* 188, 206, 203 *A.*2d 23 (1964).]

The safeguards of search and seizure law should not be reduced to a mere battle of semantics.

▉ In addition, there has not been any allegation of bad faith made with regard to the search warrant for the 1995 red Honda. As *R.* 3:5–7(g) states, "In the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it or in its execution." Thus, an extraneous reference in a search warrant that is deemed to be merely a technical error will not taint the search made pursuant to the warrant.

The reference to Sonny's Cleaners in the search warrant for the 1995 red Honda is the type of technical irregularity envisioned by the court rule. The facts in the instant case are analogous to the facts in the case of *State v. Masco*, 103 *N.J.Super.* 277, 247 *A.*2d 136 (App.Div.1968). The warrant issued in that case contained a valid command to search the described premises, as well as an illegal general command to search all persons found on the

premises. The court held that "the erroneous inclusion of the command to search the person as well as the premises did not vitiate the warrants ... since the warrants were valid as to one command and not as to the other, the part which was not essential or invalid may be treated as surplusage." *Id.* at 282, 247 *A.*2d 136. The same may be said of the surplusage of the "Sonny's Cleaners" description. Since that property was the subject of a separate warrant, it was not essential to the search of the vehicle.

Suppression of the evidence obtained pursuant to the execution of the search warrant for the 1995 red Honda is inappropriate. This is particularly true given the Supreme Court's disapproval of a hypertechnical reading of search warrants. Because the warrant was written so that an officer could reasonably surmise that it applied to the red Honda and the automobile's registration number was included on the face of the warrant, the warrant met the Fourth Amendment standard of particularity of description and should not be perceived as a general warrant.

■ Defendant also claims that one can infer from the fact that the judge who signed the search warrant for the 1995 red Honda missed the typographical error on the face of the warrant that the judge abandoned his role as a "detached and neutral magistrate." The participation of a detached and neutral magistrate is central to the issuance of search warrants, since a

> search warrant is not to issue except upon probable cause, supported by oath or affirmation. The crucial determination is to be made not by the police officer but by a neutral issuing judge. Before the judge is in a position to make his determination for issuance, he must properly be made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated (citations omitted).... As the Supreme Court succinctly put it in *Nathanson v. United States* [290 *U.S.* 41, 54 *S.Ct.* 11, 78 *L.Ed.* 159 (1933) ], a search warrant may not issue unless the issuing magistrate can find probable cause from the facts or circumstances presented to him under oath or affirmation— "Mere affirmance of belief or suspicion is not enough."
>
> [*State v. Macri,* 39 *N.J.* 250, 257, 188 *A.*2d 389 (1963).]

Only when a detached and neutral magistrate scrutinizes the facts can probable cause be established.

Despite defendant's conclusion to the contrary, there is no evidence that the judge issuing the warrants abandoned his role as a detached and neutral magistrate. Both the State and defendant have stipulated that probable cause existed for the issuance of all seven of the search warrants. The present case is similar in circumstances to *State v. Brooks*, 201 *N.J.Super.* 10, 492 *A.*2d 390 (App.Div.1985), where a municipal judge inadvertently signed a warrant that contained an incorrect indication of the items to be seized. Having been presented with Lieutenant Reheis' affidavit, the judge herein "performed the factual scrutiny necessary and found that probable cause existed to support the issuance of the warrant." *Id.* at 20, 492 *A.*2d 390. Once he determined that probable cause existed for the issuance of the seven search warrants, the judge signed the warrants presented to him. "The fact that when he turned to the warrant form he overlooked the incorrectly typed language describing the property to be [searched] in no way altered his status." *Id.* He had already fulfilled his role as a detached and neutral magistrate. This is particularly true where, as here, the judge had just issued a separate warrant for the additionally described premises about which defendant now complains. Thus, there is no basis for defendant's allegation that the judge did not act as a "detached and neutral magistrate."

Finally, defendant requests the return of all items not deemed "prima facie contraband" pursuant to *R.* 3:5–7(e). The rule states, in pertinent part, that "[i]f a motion made pursuant to this rule is granted, the property shall be delivered to the person entitled thereto . . . ." Because defendant's motion to suppress has been denied, this rule does not apply and the property need not be returned pursuant to it.

Defendant then contends that he is entitled to have the three non-contraband items of the cellular telephone, the facsimile machine and the Visitor's Register book returned, since the Prosecutor's Office has not filed a forfeiture action pursuant to *N.J.S.A.* 2C:64–3. To rule in defendant's favor would require that the

court ignore the provisions of *N.J.S.A.* 2C:64–4(a), which states, "Nothing in this chapter shall impair the right of the State to retain evidence pending a criminal prosecution." As the criminal prosecution in this case is still pending, the motion to return the property is premature and is, therefore, denied.